IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAY K. FISH,

         Plaintiff,

 v.

BOONE AND CROCKETT CLUB,

         Defendant.

OPINION & ORDER

16-cv-693-jdp

---

  Defendant Boone and Crockett Club has scored, verified, and recorded big game trophies since the 1930s. Plaintiff Jay K. Fish wants Boone and Crockett to recognize a set of antlers from a white-tailed deer known as the King Buck as the "World's Record" for white-tailed deer. Fish sent Boone and Crockett the fee and entry materials it requires to measure, score, and rank the antlers for possible inclusion in its awards programs and *Records of North American Big Game* book. But Boone and Crockett found that the King Buck antlers did not score as high as Fish thought, and so it did not include the King Buck antlers in its book or identify them as the "World's Record." Displeased with this result, Fish has filed suit against Boone and Crockett, asserting state-law claims of breach of contract and strict responsibility misrepresentation. Dkt. 16.

  Now Boone and Crockett moves to dismiss Fish's second amended complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Fish fails to state a claim upon which relief can be granted. Dkt. 19. Because each of Boone and Crockett's challenges to Fish's claims fails, the court will deny its motion.

ALLEGATIONS OF FACT

The court draws the following facts from Fish's second amended complaint, Dkt. 16, and documents referred to in it, and accepts them as true for the purpose of deciding Boone and Crockett's motion. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1, 746 (7th Cir. 2012).

Since the 1930s, Boone and Crockett, a non-profit corporation, has recorded and documented big game trophies—that is, the skulls, antlers, horns, and tusks of animals that have been killed by hunters. Boone and Crockett uses its own measuring and scoring system to rank trophies and determine which trophies may be included in new editions of its book, *Records of North American Big Game*, and recognized at its awards programs. This scoring system is described in another Boone and Crockett book, *Measuring and Scoring North American Big Game Trophies*.[1] Boone and Crockett's volunteer force of official measurers are trained to follow the scoring system described in *Measuring and Scoring*.

On November 18, 2006, Johnny King shot and killed a male white-tailed deer in Grant County, Wisconsin. The deer became known as the King Buck. Boone and Crockett official measurer John Ramsey measured the King Buck antlers in early 2007 and scored them as a 218-4/8 typical 6x6 rack. This score would rank the King Buck as the highest-scoring typical white-tailed deer ever recorded, outscoring the previous "World's

---

[1] Fish argues that the court should not consider *Measuring and Scoring* because it is extrinsic to the complaint. But "[a] motion under Rule 12(b)(6) can be based [on] documents that are critical to the complaint and referred to in it." *Geinosky*, 675 F.3d at 745 n.1. Fish's second amended complaint quotes from *Measuring and Scoring* multiple times, explicitly refers to *Measuring and Scoring* eight times, and refers extensively to Boone and Crockett's measuring and scoring system as described in *Measuring and Scoring*. *Measuring and Scoring* is referenced in and critical to Fish's second amended complaint, so the court will consider it when ruling on Boone and Crockett's motion.

Record," a 213-5/8 typical 6x6 rack known as the Hanson Buck antlers. King submitted Ramsey's score sheet for consideration for inclusion in *Records of North American Big Game* and Boone and Crockett's awards program.

But shortly after Ramsey assigned the score, Boone and Crockett asked Jack Reneau to examine the King Buck antlers, and he scored them as a 180-0/8 typical 5x5 rank with two abnormal points—a score well below the World's Record. (The disparity results from a disagreement about whether certain points on the antlers are "abnormal.") King, believing Reneau was incorrect, withdrew his entry from Boone and Crockett.

In December 2009, Fish bought the King Buck antlers from King. Another Boone and Crockett official measurer, Ron Boucher, remeasured the antlers in October 2010 and scored them as a 218-6/8 typical 6x6 rack. In November 2010, Fish submitted Boucher's score sheet for consideration for inclusion in *Records of North American Big Game* and Boone and Crockett's awards program. His submission included the specified fee and entry materials listed in *Measuring and Scoring*. Boone and Crockett refused to accept Fish's entry.

In September 2012, despite its earlier refusal to accept Fish's entry, Boone and Crockett convened a "judges panel" to measure and score the King Buck antlers. The panel scored the antlers as a 180-0/8 typical 5x5 rack with two abnormal points. The panel deviated from the "Special Judges Panel" process described in *Measuring and Scoring* and used a version of the scoring system that post-dated Fish's November 2010 submission of the King Buck antlers. According to the newest edition of *Records of North American Big Game*, the Hanson Buck is still the World's Record for typical white-tailed deer.

The court has subject matter jurisdiction over Fish's claims pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

ANALYSIS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; it is not an opportunity to undertake fact-finding or weigh evidence. In considering such a motion, the court will "accept all well-pleaded facts in the complaint as true and then ask whether those facts state a plausible claim for relief." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015). The court is not bound to accept alleged legal conclusions or threadbare allegations that merely recite the elements of a claim. *Id.* at 826-27.

Fish's claim for breach of contract provides the foundation for his theory of the case and for his strict responsibility misrepresentation claim. He alleges that Boone and Crockett "advertised and marketed to the public a service and process whereby" the owner of a big game trophy hunted and killed under defined conditions may have an official measurer score the trophy using Boone and Crockett's measuring and scoring system and may then submit the score, along with a specified fee and entry materials, to Boone and Crockett for ranking and possible inclusion in *Records of North American Big Game* and Boone and Crockett's awards program. Dkt. 16, ¶ 10. He alleges that he accepted Boone and Crockett's "offer" when he submitted Boucher's score sheet for the King Buck antlers and other required entry materials in November 2010, forming a contract. He alleges that Boone and Crockett breached that contract by failing to fulfill its advertised terms and conditions, "including its obligation to measure and score the King Buck in accordance with Boone & Crockett's measuring and

4

scoring system, to rank and record the King Buck as the new Boone & Crockett 'World's Record' for typical white-tailed deer, and to include the King Buck in Boone & Crockett's Awards Programs and among the exceptional and trophy specimens of North American big game recorded by Boone & Crockett in its *Records of North American Big Game* book and other publications and media." Dkt. 16, ¶ 39.

Boone and Crockett contends that Fish fails to state a claim for breach of contract or strict responsibility misrepresentation for a number of reasons. Boone and Crockett's arguments present four questions. The court will address each question in turn.

**A. Does Fish allege the formation of a contract?**

Boone and Crockett contends that it did not form a contract with Fish, and therefore Fish's breach of contract claim must fail. But Fish alleges facts sufficient to show a contract. He alleges that Boone and Crockett advertised a service of ranking and recording big game trophies provided the individual submitted certain materials. And he alleges that he submitted the required materials to Boone and Crockett to take part in that service, accepting Boone and Crockett's offer. These allegations are sufficient to show the formation of a contract under Wisconsin law. *See Lucas v. Godfrey*, 161 Wis. 2d 51, 467 N.W.2d 180, 184 (Ct. App. 1991) ("An entrant or contestant who performs the act requested . . . accepts the offer to enter the contest and thus 'forms a valid and binding contract with the promoter.'" (quoting Annotation, *Private Contests and Lotteries: Entrants' Rights and Remedies*, 64 A.L.R. 4th 1021, 1045 (1988))).

Boone and Crockett argues that even if it made an "offer," Fish's submission was not an acceptance of that offer because he did not comply with all of the entry requirements listed in *Measuring and Scoring*. Specifically, Boone and Crockett points to *Measuring and*

5

*Scoring*'s "score shopping" policy, which states, "Under no circumstances should the trophy owner ever ask a different measurer to rescore his trophy without prior approval from the records office as only the Records Office can approve a remeasurement." Dkt. 25-2, at 143. Boone and Crockett argues that Fish failed to follow this requirement when he obtained a second score from Boucher. But Boone and Crockett's score shopping policy is not an entry requirement. The same policy states that "trophies of anyone caught 'shopping for a higher score' will be accepted at the lowest score arrived at by the different measurers who scored it." *Id.* Whether Fish received approval for Boucher's rescoring and whether Fish and Boone and Crockett followed the other procedures described in *Measuring and Scoring* are material to the question of whether Boone and Crockett breached its contract with Fish, not whether the parties formed a contract in the first place. Fish has adequately pleaded the existence of a contract, so he states a claim for breach of contract.

**B. Which alleged contract is at issue?**

Boone and Crockett contends that Fish lacks standing to pursue his breach of contract claim and that both of Fish's claims are barred by the applicable statute of limitations because the contract at issue in this suit is the 2007 contract formed when King entered the King Buck antlers for consideration.

Perhaps Boone and Crockett breached its contract with King back in 2007, but that is not the contract Fish is suing about—nor could it be, because as Boone and Crockett acknowledges, Fish would not have standing to sue for a breach of King's 2007 contract. *See Door v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 597 N.W.2d 462, 475 (Ct. App. 1999) ("[T]he general rule is that only a party to a contract may recover under it . . . ."). The alleged contract at issue here is the one Fish entered into in November 2010. Although King's

actions no doubt inform Fish's claims—especially the issue of whether Boone and Crockett breached its contract with Fish when it refused to recognize the King Buck antlers as the World's Record—it is Boone and Crockett's alleged breach of Fish's contract that forms the basis of Fish's claims. Therefore, Fish has standing to sue, and he filed suit within the six-year statute of limitations period applicable to both of his claims. *See* Wis. Stat. § 893.43(1); *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115, 117 (1993).

## C. Does Fish allege that Boone and Crockett had an economic interest in the transaction?

To state a claim for strict responsibility misrepresentation, Fish must allege that Boone and Crockett "made a false factual representation on [its] personal knowledge or under circumstances in which [it] should have known the truth or untruth of the statement," that Fish "believed the representation to be true and relied on it to his . . . detriment," and that Boone and Crockett "had an economic interest in the transaction into which [Fish] entered." *Am. Tr. & Sav. Bank v. Phila. Indem. Ins. Co.*, 678 F. Supp. 2d 820, 824 (W.D. Wis. 2010). Boone and Crockett contends that Fish fails to allege facts sufficient to show that it had an economic interest in Fish's submission of the King Buck antlers for ranking and recording. "To establish the economic interest prong of a strict responsibility misrepresentation claim, the plaintiff must demonstrate that 'defendant stood to make a financial gain' as the result of the plaintiff's participation in the transaction." *Id.* at 825 (quoting *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 401 N.W.2d 816, 827 n.13 (1987)).

Fish alleges that he submitted the required fee to Boone and Crockett for consideration for inclusion in *Records of North American Big Game* and Boone and Crockett's awards program. *Measuring and Scoring* confirms that an entry fee is required before Boone

and Crockett will consider a trophy for ranking and recording. Thus, Fish plausibly alleges that Boone and Crockett stood to make a financial gain from Fish's submission of the King Buck antlers for ranking and recording.

Boone and Crockett argues that once Fish submitted the King Buck antlers for consideration, it had no economic interest in *how* it ranked the King Buck antlers. That may be, but that is not the basis of Fish's claim. Fish alleges that he relied upon Boone and Crockett's representations about how it measures, scores, ranks, and records big game trophies when he submitted the King Buck antlers for consideration and that Boone and Crockett did not adhere to its representations. The transaction at issue was Fish's "entry." Boone and Crockett stood to make a financial gain from Fish's entry because he had to pay the required entry fee. Fish alleges an economic interest.

**D. May Fish request specific performance as relief?**

In its motion, Boone and Crockett contended that specific performance is unavailable as a remedy because Fish also requests monetary damages. In its reply brief, Boone and Crockett concedes that Fish may request alternative forms of relief in his complaint, but argues instead that specific performance is unavailable because Fish fails to state a claim for breach of contract and because Fish fails to allege facts showing that monetary damages would not be an adequate remedy. Boone and Crockett waived these arguments by waiting until its reply brief to raise them. *See United States v. Matchopatow*, 259 F.3d 847, 851 (7th Cir. 2001). And even if the court considered them, it would not dismiss Fish's demand for specific performance. As discussed above, Fish does state a claim for breach of contract. And as Boone and Crockett concedes, Fish may request alternative forms of relief in his complaint; he need not allege that either form of relief would not be adequate on its own.

ORDER

IT IS ORDERED that defendant Boone and Crockett Club's motion to dismiss, Dkt. 19, is DENIED.

Entered April 18, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge